UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLEN CAIN,

    Petitioner,

v.

LLOYD RAPELJE,

    Respondent.
_____/

Case No. 2:12-CV-13637
HON. NANCY G. EDMUNDS
UNITED STATES DISTRICT COURT

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS***

Allen Cain, ("Petitioner"), confined at the Parnall Correctional Facility in Jackson, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for two counts of third-degree criminal sexual conduct, M.C.L.A. 750.520d, and being a fourth felony habitual offender, M.C.L.A. 769.12. For the reasons that follow, the petition for a writ of habeas corpus is **DENIED**.

**I. Background**

Petitioner was convicted following a jury trial in the Oakland County Circuit Court. Petitioner's convictions arose from his repeated sexual assaults on 16-year-old A.B.[1] A.B. lived with her Aunt Tina, who was A.B.'s legal guardian, and petitioner, Tina's boyfriend. A.B. considered petitioner to be her uncle. Petitioner sexually assaulted A.B.

---

[1] Because the victim was a minor at the time of the offense, the Court will refer to her by her initials only to preserve her privacy. *See* Fed. R. Civ. P. 5.2(a).

1

twice in September 2008: one time involved penis-vaginal penetration and the other involved cunnilingus.

A.B. testified that in September of 2008 she lived in Farmington Hills, Michigan with her aunt, petitioner, and two cousins. A.B. was 16 years-old. (ECF No. 9-5, PageID.155, 158). On September 6, 2008 petitioner asked her to come into his bedroom. When A.B. entered the bedroom, petitioner closed the door and pulled down his pants. A.B. asked what he was doing, but petitioner did not answer. Petitioner pushed A.B. down onto the bed and pulled down the victim's pants and underwear. A.B. asked petitioner what he was doing, and kept telling him no, but petitioner did not reply. A.B. testified that she was upset, scared, and wanted petitioner to stop. Petitioner engaged in penile-vaginal intercourse with the victim before ejaculating into a towel. Petitioner let A.B. get up and gave her a hundred dollars. A.B. told her friend about the sexual assault, but admitted that she did not report the incident to the police or her aunt because she was scared. (ECF No. 9-5, PageID.150-53).

Two weeks later, A.B. was home alone with petitioner. Petitioner came up the stairs to A.B.'s bedroom where she was changing clothes and told her he wanted to apologize for the earlier assault. A.B. told petitioner that he could never be sorry enough for what happened. Instead of expressing his remorse and leaving, petitioner told A.B. he wanted to have sex again with her. A.B. informed petitioner she did not want to have sex with him. Petitioner pushed the victim to the floor. Once on the floor, petitioner pushed aside the victim's underwear and performed oral sex on her for about five minutes. Petitioner went

2

back down the stairs while the victim got dressed. As A.B. left the house, petitioner gave her more money. (ECF No. 9-5, PageID.153-55).

Although A.B. told her friend Lisa about the first sexual assault and her friend Katie about the second attack, she did not want to tell her family what had occurred. A.B. did not want to report the attacks to the police because she was scared that no one would believe her and did not want to break up her aunt's family. However, at Thanksgiving, A.B. told Sarah Stark, her uncle's girlfriend, about the assaults. (ECF No. 9-5, PageID.155-56). A.B.'s relatives drove her to the Farmington Hills Police Department. (ECF No. 9-5, PageID.146). A.B. admitted that she smoked marijuana and that she stole marijuana from petitioner and refused to do chores. A.B. admitted that she did not like being disciplined by petitioner and was disrespectful to him. A.B. admitted that she smoked marijuana with petitioner, beginning after the first sexual assault. Prior to the incident, petitioner became angry when A.B. stole his marijuana. Following the incident, he lit up and offered marijuana to her. (ECF No. 9-5, PageID.156-58, 161).

Following his arrest, petitioner was interviewed by the police. Detective Garin Anderson testified that petitioner was passed out drunk when taken into custody. About four hours later, petitioner was advised of his *Miranda* rights and questioned. Detective Anderson did not ask petitioner if he was still intoxicated nor did he give him a breathalyzer test, but the detective indicated that petitioner was not stumbling nor slurring his speech. Defense counsel objected to the admission of the statement on the ground that petitioner was still intoxicated when interrogated, but was overruled. Petitioner told the detective he offered A.B., a woman named Lisa, and the victim's cousin Jessica money and marijuana

3

in exchange for sex. Petitioner claimed he did this to "test" the women, but denied ever having sex with the victim. (ECF No. 9-6, PageID.187-89).

A.B.'s cousin, Jessica Gernaey, told the police that she believed A.B. consented to having sex with petitioner in exchange for marijuana and money. (ECF No. 9-5, PageID.177). Jessica said that petitioner told her he had sex with A.B. in exchange for $100.00. (ECF No. 9-6, PageID.203). A.B.'s friend, Caitlin Erwin, testified that she believed that the marijuana A.B. was given was to keep her quiet about having sex with petitioner and/or to continue having sex with him. (ECF No. 9-5, PageID.170).

A.B.'s aunt, Tina Gernaey, testified that the victim had previously accused her grandfather of sexually assaulting her. When Gernaey went to call the police, A.B. admitted that she was lying. (ECF No. 9-6, PageID.199). A.B. denied accusing her grandfather of sexually assaulting her. (ECF No. 9-6, PageID.192).

Petitioner's conviction was affirmed. *People v. Cain*, No. 298416, 2011 WL 6268187 (Mich. Ct. App. Dec. 15, 2011); *lv. den.* 491 Mich. 922, 812 N.W.2d 763 (2012).

Petitioner filed his habeas petition in 2012, which was held in abeyance so that he could exhaust additional claims with the state courts. *Cain v. Rapelje*, No. 2:12-CV-13637, 2013 WL 1365331 (E.D. Mich. Apr. 4, 2013).

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Cain,* No. 09-225346-FC (Oakland County Cir. Ct., Jan. 6, 2016); *recon. den.,* No. 09-225346-FC (Oakland County Cir. Ct., Feb. 26, 2016). The Michigan appellate courts denied petitioner's application for leave to appeal. *People v. Cain,* No. 333772 (Mich. Ct. App. Dec. 21, 2016); *lv. den.* 501 Mich. 908, 902 N.W.2d 621 (2017).

4

Petitioner moved to reopen the case and to amend the petition, which this Court granted. In his amended petition, petitioner seeks habeas relief on the following grounds:

I. The trial court violated Mr. Cain's right to a fair trial and due process when, upon learning that the jury was at an impasse, the court gave a coercive instruction, which ultimately forced that juror to abdicate rather than adhere to his or her conscientious opinion; trial counsel was ineffective for failing to object.

II. Petitioner was denied the effective assistance of counsel, where trial counsel failed to do a thorough pretrial investigation regarding the victim's attempt to blackmail the petitioner, failed to interview witnesses that knew of the reported blackmail and material to the defense, failed to secure police reports of the previous false accusations that the alleged victim made regarding sexual assaults, failed to file a pretrial motion to suppress the statement given while petitioner had been intoxicated. The cumulative effect of errors denied petitioner due process and a fair trial.

III. Petitioner was denied the effective assistance of appellate counsel for failure to file the omitted issues or request an evidentiary hearing regarding the ineffective assistance of counsel.

IV. Petitioner was denied the effective assistance of trial counsel where petitioner was not given a competency examination, where it was apparent that petitioner was mildly retarded, petitioner was denied due process where trial counsel did not have petitioner determined for his ability to be tested to ascertain criminal responsibility. [2]

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

---

[2] Respondent addressed petitioner's first claim in their initial answer. (ECF No. 8). Respondent addresses petitioner's remaining claims in the supplemental answer filed after the case was reopened and the amended petition was filed to add the additional claims. (ECF No. 22).

5

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and

6

comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.

The Michigan Court of Appeals reviewed and rejected petitioner's first claim which alleged that the judge gave the deadlocked jurors a coercive jury instruction under a plain error standard. Petitioner failed to preserve this issue as a constitutional claim at the trial court level. The AEDPA deference applies to any underlying plain-error analysis of a procedurally defaulted claim. *See Stewart v. Trierweiler*, 867 F.3d 633, 638(6th Cir. 2017).

Petitioner's second through fourth claims were raised in his post-conviction motion for relief from judgment. In reviewing a claim under the AEDPA's deferential standard of review, this Court must review "the last state court to issue a reasoned opinion on the issue." *Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010)(quoting *Payne v. Bell*, 418 F.3d 644, 660 (6th Cir. 2005). The Michigan Court of Appeals and the Michigan Supreme Court both denied petitioner's post-conviction application for leave to appeal in unexplained one-sentence orders. Accordingly, this Court must "look through" these decisions to the Oakland County Circuit Court opinion denying the motion for relief from judgment, which was the last state court to issue a reasoned opinion. Then, the Court can decide whether that court's adjudication of petitioner's claims was "contrary to," or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See Hamilton v. Jackson*, 416 F. App'x 501, 505 (6th Cir. 2011). Although the state court judge procedurally defaulted the claims pursuant to M.C.R. 6.508(D)(3), because petitioner failed to show cause and prejudice for failing to raise these claims on his appeal of right, the judge also denied petitioner's post-conviction claims on

7

the merits; thus, the AEDPA's deferential standard of review applies to the opinion. *See Moritz v. Lafler*, 525 F. App'x 277, 284 (6th Cir. 2013). [3]

### III. Discussion

#### A. The Court will not dismiss the petition on statute of limitations grounds.

Respondent in their supplemental answer urges this Court to summarily dismiss the petition on statute of limitations grounds because petitioner filed his post-conviction motion for relief from judgment with the state trial court three days beyond the sixty day deadline which this Court had imposed in its opinion and order holding the petition in abeyance.

The statute of limitations does not constitute a jurisdictional bar to habeas review, thus, a federal court, can, in the interest of judicial economy, proceed to the merits of a habeas petition. *See Smith v. State of Ohio Dept. of Rehabilitation,* 463 F.3d 426, 429, n. 2 (6th Cir. 2006)(quoting *Trussell v. Bowersox,* 447 F.3d 588, 590 (8th Cir. 2006)). This Court need not resolve the dispute over the timeliness of petitioner's amended habeas

---

[3] Respondent urges this Court to procedurally default these claims because petitioner failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for failing to raise them on his appeal of right. Respondent argues that petitioner's first claim is also procedurally defaulted because petitioner failed to object at trial. Petitioner argues in his first claim that trial counsel was ineffective for failing to object to the instruction and argues in his third claim that appellate counsel was ineffective for failing to raise his second and fourth claims on his appeal of right. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of the defaulted claims, it would be easier to consider the merits of the claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004). Petitioner could not procedurally default his ineffective assistance of appellate counsel claim because post-conviction review was the first opportunity he had to raise this claim. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

petition. Assuming without deciding that the amended petition was timely, petitioner's claims fail on the merits. *See Ahart v. Bradshaw,* 122 F. App'x 188, 192 (6th Cir. 2005).

### B. Claim # 1. The deadlocked jury instruction claim.

Petitioner in his first claim argues that the judge gave the jurors a coercive jury instruction when the jury sent him a note informing the court that they were at an impasse.

In petitioner's case, the jury sent a note to the judge indicating that they were unable to reach a verdict. The trial judge, through his bailiff, instructed the jurors to continue their deliberations and rely on their notes and their collective memories. Petitioner argues that this instruction was unduly coercive. Petitioner also argues that the judge should have given the jurors the model American Bar Association jury instruction 5.4 for deadlocked juries, as approved by the Michigan Supreme Court in *People v. Sullivan*, 392 Mich. 324, 335, 220 N.W.2d 441, 446 (1974), which states the following:

Length of deliberations; deadlocked jury.

(a) Before the jury retires for deliberation, the Court may give an instruction which informs the jury:

(i) that in order to return a verdict, each juror must agree thereto;

(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(iv) that in the course of deliberations, a juror should not hesitate to re-examine his own views and change his opinion if convinced it is erroneous; and

9

> (v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.
>
> (b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.
>
> (c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement.

The Michigan Court of Appeals rejected petitioner's claim as follows:

The first part of the instruction, urging the jurors to continue their deliberations, was not coercive. Such an instruction was consistent with ABA standard 5.4(b), which states that a trial judge may require the jury to continue its deliberation. The standard instruction does clarify, however, that the trial court must not require or threaten to require "the jury to deliberate for an unreasonable length of time or for unreasonable intervals." In this case, the actual time the jury spent deliberating only amounted to a little over one day, and there is no indication that the trial judge threatened the jury with an unreasonable time or intervals of deliberation.

The second part of the instruction, urging jurors to rely on their collective memories and notes, also lacked any coercive effect. Our Supreme Court has stated that, where additional language contains "'no pressure, threats, embarrassing assertions, or other wording that would cause this Court to feel that it constituted coercion,'" then that language will "rarely constitute a substantial departure" from the standard instruction, A simple instruction guiding jurors to rely on their collective memories hardly amounts to threatening language. The term "collective memories" also does not pressure the jurors to come to the exact same conclusion or opinion. The phrase only refers to the juror's ability to recall the facts presented, and does not require that the interpretations of those facts or the conclusions drawn from the facts be identical. Rather than coercing the jury, this instruction had the "overall effect" of stressing "the need to engage in full fledged deliberation."

Finally, the lack of coerciveness is especially apparent when this instruction is reviewed in the context of all the instructions given to the jury. Prior to the beginning of jury deliberations, the trial court specifically instructed that each juror had to make up his or her own mind, and that no one should give

>up an honest opinion just because other jurors disagree. The court further explained that it was a juror's duty to exchange opinions and reasons and to enter into a full discussion with the other members of the jury. Thus, when the later instruction, urging a reliance on collective memories, is viewed in the context of these prior jury instructions, the later instruction can more aptly be characterized as encouraging discussion and a collaborative exchange of facts, rather than an attempt to coerce a dissenting juror to change his mind.

*People v. Cain*, 2011 WL 6268187, at *2 (internal citations omitted).

It is axiomatic that "a trial court may properly encourage a deadlocked jury to continue its deliberations and attempt to reach a verdict." *U.S. v. Aloi,* 9 F.3d 438, 443 (6th Cir. 1993)(citing *Allen v. United States*, 164 U.S. 492, 501–02 (1896)). "A charge that strays too far from the charge approved in *Allen* will rise to the level of a constitutional violation only if 'in its context and under all the circumstances, [the charge] ... was coercive.'" *Id.* (quoting *Williams v. Parke*, 741 F.2d 847, 850 (6th Cir. 1984)(quoting *Jenkins v. United States*, 380 U.S. 445, 446(1965)).

The judge's instruction to the jurors to continue deliberating was not unduly coercive, because the judge "did not pressure a decision in a particular direction." *U.S. v. Lash*, 937 F.2d 1077, 1086 (6th Cir. 1991).

Petitioner also argues that the judge should have given the jurors the ABA's model jury instruction for deadlocked juries, or the deadlocked jury instruction, CJI 2d 3.12, both of which include admonitions that the jurors should not give up their own "honest conviction" or "honest beliefs" simply to reach a verdict.

A trial court's failure to include a reminder that jurors should not abandon their honest convictions or beliefs in its supplemental instruction, in response to the jury's indication of possible deadlock, "is not invariably fatal to the conviction." *See Bedford v.*

11

*Collins,* 567 F.3d 225, 238 (6th Cir. 2009). The trial judge in his initial charge to the jury had instructed them that "none of you should give up your honest opinion about the case just because other jurors disagree with you or just for the sake of reaching a verdict." (ECF No. 9-6, PageID.212). The original instruction's caveat to the jurors that they should not give up their "honest opinion" just to reach a verdict obviated the need for the court to give such an admonition in its supplemental instruction to the deadlocked jury. *Id.* The lack of any coercive language in the supplemental instruction to the jurors "also diminished the need for an honest-conviction caveat." *Id.* Thus, the failure to give the jurors the deadlocked jury instruction, with its caveat about not surrendering one's honest beliefs, does not entitle petitioner to relief.

The Michigan Court of Appeals' determination that the judge's instruction to the deadlocked jurors was not unduly coercive was reasonable. Petitioner is not entitled to habeas relief on his jury instruction claim. *See Early v. Packer,* 537 U.S. 3, 10-11 (2002).

**C. Claims # 1-4. The ineffective assistance of counsel claims.**

In his remaining claims, petitioner alleges he was denied the effective assistance of trial and appellate counsel.

To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was

12

deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

Petitioner in his first claim alleges that trial counsel was ineffective for failing to object to the coercive instruction given to the deadlocked jurors. The jury instruction was not unduly coercive; accordingly, counsel was not ineffective for failing to object. *See United States v. Quintero-Barraza*, 78 F.3d 1344, 1350 (9th Cir. 1995).

Petitioner's other ineffective assistance of counsel claims were raised in his post-conviction motion for relief from judgment.

Petitioner in his second claim alleges that trial counsel was ineffective for failing to call witnesses who would testify that the victim had attempted to blackmail him. He also alleges that trial counsel was ineffective for failing to introduce police reports that the victim had falsely accused other persons of sexually assaulting her.

A habeas petitioner cannot show deficient performance or prejudice resulting from counsel's failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material to his defense. *See Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002). Petitioner cannot succeed on his claim that trial counsel was ineffective for failing to adequately prepare the case or conduct an adequate investigation because he failed to show how additional pretrial work counsel had allegedly been deficient in failing to perform would have been beneficial to his defense. *See Martin v. Mitchell,* 280 F.3d 594, 607-08 (6th Cir. 2002).

In particular, petitioner is not entitled to relief on his claim that counsel was ineffective for failing to present witnesses to support his claim that the victim was

13

attempting to blackmail him because he failed to provide the Michigan courts or this Court with affidavits from these witnesses concerning their proposed testimony and willingness to testify on petitioner's behalf. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, cannot support a claim for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). In failing to attach any offer of proof or any affidavit sworn by these witnesses, petitioner offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether there were witnesses who would have testified and what their proposed testimony would have been. Without such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to investigate or to call these witnesses to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F.3d 551, 557 (6th Cir. 2007).

Petitioner also failed to attach any police reports to his motion for relief from judgment or to his petition to show that any prior false sexual assault allegations had been filed by the victim with the police. Because petitioner has failed to show that there were any police reports which contained information that would exonerate him of these crimes, any alleged failure by counsel to obtain or use these police reports did not prejudice petitioner, so as to entitle him to habeas relief on his ineffective assistance of trial counsel claim. *See Pillette v. Berghuis,* 408 F. App'x 873, 889-90 (6th Cir. 2010).

Moreover, the United States Supreme Court has held that habeas review under 28 U.S.C. §2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. at 181. *Cullen* would preclude the

14

Court from considering any new evidence that the petitioner would even want to present at this point in support of this portion of his ineffective assistance of trial counsel claim under 28 U.S.C. §2254(d). *Cf. Campbell v. Bradshaw*, 674 F.3d 578, 590, n.3 (6th Cir. 2012)(declining to consider testimony taken in federal evidentiary hearing because it was not part of the state court record).

Furthermore, petitioner was not prejudiced by counsel's failure to either present witnesses to testify about the victim's attempt to blackmail him or to present any possible prior police reports because defense counsel presented adequate evidence to impeach the victim's credibility and her motive to falsely accuse petitioner of sexual assault. A.B. admitted that she resented petitioner's attempts to discipline her or force her to do chores. The victim admitted that she continued smoking marijuana with petitioner even after the first sexual assault. A.B. admitted she delayed reporting the sexual assaults to her family or to the police. The victim's cousin and friend both indicated that A.B. was receiving money and marijuana from petitioner either to engage in consensual sex with petitioner or to remain quiet about the encounters. A.B.'s aunt testified that she had falsely accused her grandfather of sexually abusing her. A.B. later denied making this allegation to her aunt, which further called into question her credibility.

Petitioner was not prejudiced by counsel's failure to introduce additional testimony to impeach the victim's credibility because it was cumulative of other evidence in support of petitioner's claim that the victim falsely accused him of sexual assault. *Wong v. Belmontes,* 558 U.S. 15, 22-23 (2009); *see also United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995); *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001).

15

Because the jury was "well acquainted" with evidence that would have supported petitioner's claim that he did not sexually assault the victim and that she had consented to sexual relations with him, additional evidence in support of petitioner's defense "would have offered an insignificant benefit, if any at all." *Wong,* 558 U.S. at 23.

Petitioner in his second claim also argues that trial counsel was ineffective for failing to bring a pre-trial motion to suppress his statement to Detective Anderson, on the ground that petitioner could not have voluntarily agreed to speak with the detective because he was intoxicated when he was interrogated.

Although counsel did not file a pre-trial motion to suppress, counsel did object to the admission of the statement at trial. Counsel's decision to challenge the voluntariness of the statement mid-trial rather than in a pre-trial motion is a reasonable strategy that defeats petitioner's claim. *See e.g. Garcia-Dorantes v. Warren,* 769 F. Supp. 2d 1092, 1106 (E.D. Mich. 2011). Petitioner is not entitled to relief on his second claim.

Petitioner in his fourth claim alleges that trial counsel was ineffective for failing to challenge petitioner's mental competency to stand trial.

Petitioner presented no evidence to this Court that he has a mental illness or was incompetent to stand trial. A defendant is not prejudiced by counsel's failure to seek a competency examination, absent an actual basis to support a claim of incompetency at the time of the proceeding. *See Bair v. Phillips*, 106 F. Supp. 2d 934, 941 (E.D. Mich. 2000). Because petitioner has failed to establish that he was incompetent at the time of his trial, counsel would not have been ineffective for failing to seek a competency evaluation.

16

Petitioner also claims that trial counsel was ineffective for failing to raise an insanity defense.

Petitioner is not entitled to habeas relief on this claim for several reasons. First, petitioner's claim is without merit because he failed to present any evidence, either to the state courts, or to this Court, that he was legally insane at the time of the crime. *See e.g. Sneed v. Johnson,* 600 F.3d 607, 611 (6th Cir. 2010). More specifically, in light of the fact that petitioner has failed to show that he has an expert who would testify that he was legally insane at the time of the offenses, counsel's failure to raise an insanity defense was not prejudicial to petitioner. *See Abdur'Rahman v. Bell,* 226 F.3d 696, 715 (6th Cir. 2000).

Petitioner lastly claims that the cumulative nature of the errors deprived him of the effective assistance of counsel. Because the individual claims of ineffectiveness alleged by petitioner are all meritless petitioner cannot show that the alleged cumulative errors of trial counsel amounted to ineffective assistance of counsel. *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Petitioner is not entitled to relief on his second or fourth claims.

Petitioner in his third claim alleges that appellate counsel was ineffective for failing to raise his second and fourth claims on his appeal of right.

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). A habeas court must defer twice: first to appellate counsel's decision not to raise an issue and secondly, to the state court's determination that appellate counsel was not ineffective.

17

*Woods v. Etherton*, 136 S. Ct. 1149, 1153 (2016)(per curiam)("Given AEDPA, both Etherton's appellate counsel and the state habeas court were to be afforded the benefit of the doubt.").

Petitioner's second and fourth claims are meritless. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Petitioner is not entitled to relief on his third claim.

### IV. Conclusion

The Court will deny the petition for a writ of habeas corpus with prejudice. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *see also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001). The

Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *Id.*

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

                                                   s/ Nancy G. Edmunds  
                                                   **HON. NANCY G. EDMUNDS**  
                                                   **UNITED STATES DISTRICT COURT JUDGE**

**Dated: May 26, 2020**

**I hereby certify that a copy of the foregoing document was served upon counsel of record and Allen Cain on May 26, 2020, by electronic and/or ordinary mail.**

**Dated: May 26, 2020**                                      s/ L. Bartlett  
                                                    **Case Manager**